UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | | |
|---|---|---|
| IN RE: ) | CASE No. | 16-21698 (JJT) |
| ) | | |
| PAUL S. CIARCIA AND ) | | |
| LISA A. CIARCIA, ) | CHAPTER | 13 |
| DEBTORS. ) | | |
| ) | RE: ECF Nos. | 25, 35, 36, 39, 42 |
| ) | | |

## APPEARANCES

R. Richard Croce, Esq.                                                                      Attorney for the Debtors
438 Main Street, Suite 202
Middletown, CT 06457

Patrick Crook, Esq.                                                              Attorney for the Chapter 13 Trustee
10 Columbus Boulevard
Hartford, CT 06106

Amy Ciarcia                                                                                    *Pro Se* Interested Party
110 Cobey Road
Rocky Hill, CT 06067

Denise Rivera                                                                                              *Pro Se* Creditor
38 Jeanette Court
Plantsville, CT 06479

## RULING AND ORDER ON MOTIONS TO DISMISS
## AND MOTION FOR RELIEF FROM STAY

I.  INTRODUCTION

      Pending before this Court are the Chapter 13 Trustee's Motion to Dismiss (ECF No. 25),

the Motion to Dismiss as it Applies to the Debtor Paul S. Ciarcia ("Motion to Dismiss", ECF No.

35) and Motion for Relief from Stay (ECF No. 36) filed by a *pro se* interested party, Amy

Ciarcia, the Debtors' Objection to the Motion for Relief from Stay (ECF No. 39), and the

Debtors' Objection to Amy Ciarcia's Motion to Dismiss (ECF No. 42). For the reasons stated herein, the Court grants the Motions to Dismiss and dismisses the case with prejudice as to Paul S. Ciarcia as set forth below. The case is dismissed as to Lisa A. Ciarcia without prejudice. For cause shown, the Court also grants the Motion for Relief from Stay.

II. JURISDICTION

This Court has subject matter jurisdiction over this bankruptcy case and this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1). This matter is a core proceeding under 28 U.S.C. § 157(b)(2). This opinion constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

III. FACTS

Paul S. Ciarcia ("Debtor" or "Mr. Ciarcia") is a co-debtor with his wife, Lisa A. Ciarcia (collectively, "Debtors"), in the above-captioned Chapter 13 bankruptcy case. The Debtor, prior to the filing of this case, was also a 50% owner of a business named Ciarcia Family, LLC, with his sister-in-law, Amy Ciarcia who was the other 50% owner. Ciarcia Family, LLC was a real estate holding company located at 804 Stanley Street in New Britain, Connecticut ("the Property"), from which the Debtor and Amy Ciarcia's husband, Michael Ciarcia, operated an automotive repair shop. In September 2005, Ciarcia Family, LLC executed a note and mortgage with Bayview Loan Servicing, LLC ("Bayview") on the Property. Amy Ciarcia and the Debtor were personal guarantors on the mortgage. At all relevant times, the Debtor maintained an automotive shop and later a construction business on the Property—namely Paul's Automotive, LLC, and thereafter Expo Auto, LLC and Expo Remodeling, LLC—and collected rents from other tenants on the Property.

On November 30, 2011, October 17, 2012, and June 19, 2013, three mortgage modifications were entered into and purportedly duly authorized and signed by Ciarcia Family, LLC, Amy Ciarcia, and the Debtor.[1] In May 2016, after learning that the Debtor defaulted on the loan and allegedly forged her name on the mortgage modifications, Amy Ciarcia confronted the Debtor and demanded that he make payments on the loan obligation. In August 2016, after various family disputes over his financial obligations, his failure to pay or turnover rents, and his alleged forgery of the mortgage modifications, the Debtor transferred his ownership interest in Ciarcia Family, LLC to Amy Ciarcia.

On November 22, 2015, the Debtor, operating through Expo Auto, LLC and/or Expo Remodeling, LLC, entered into a contract with Denise Rivera to complete construction work on the roof and interior of her dance studio. Under the terms of the contract, the Debtor was to complete thirteen separate construction jobs on the building for a total of $30,000.00. Despite receiving approximately $22,000.00 from Denise Rivera, the Debtor failed to complete several jobs, and otherwise engaged in uncraftsman like work that caused damage to several areas of the building. In response to Denise Rivera's concerns and requests for redress, the Debtor employed misleading and dilatory tactics and ultimately failed to rectify his breach of contract.

The Debtors filed their first bankruptcy case under Chapter 7 on October 12, 2012. Bayview was scheduled as a secured creditor with respect to the mortgage on the Property in the amount of $350,000.00. The Debtors received a discharge on March 20, 2013.

On October 18, 2016, the Debtors initiated the instant Chapter 13 case, purportedly filed to save their home. On the petition, Mr. Ciarcia disclosed a 35% ownership interest in Ciarcia

---

[1] Amy Ciarcia claimed she never approved these modifications, nor executed them. Strangely, the alleged modifications seem to lack witnesses and notarization, and bear a purported signature of Amy Ciarcia with attributes comparable to the Debtor's distinctive endorsement. *See* AC Ex. D.

3

Family, LLC[2], and claimed an exemption of $7,500.00 for tools of trade in the Property.[3] Mr. Ciarcia also indicated on the petition that he was self-employed by 'Paul's Automotive', located on the Property, and received $0.00 in monthly income and $9,977.50 in net income 'from rental property and from operating a business.'[4] The Debtors listed secured claims in the amount of $340,411.62, and unsecured nonpriority claims in the amount of $34,332.00. On November 22, 2016, the Debtors amended their Schedules E and F to include an additional unsecured nonpriority claim, thereby increasing the total amount of unsecured claims to $38,332.00. Neither Amy Ciarcia, Ciarcia Family, LLC, nor Denise Rivera were scheduled as creditors or given notice of the Chapter 13 filing.

On December 15, 2016, the Chapter 13 Trustee ("Trustee") filed a Motion to Dismiss (ECF No. 25) the Chapter 13 case, arguing that the Debtor was in default and failed to propose a plan that conformed to the secured claims filed or provided for all of the Debtors' projected disposable income to be applied to unsecured debt.

On March 23, 2017, Amy Ciarcia initiated a lawsuit, *Amy Ciarcia v. Paul Ciarcia, Bayview Loan Servicing, LLC et. al.*, HHB-CV17-5018368 ("Mortgage Litigation") against the Debtor, Bayview and Ciarcia Family, LLC in the Connecticut Superior Court. The lawsuit claimed fraud, theft and forgery on part of the Debtor with respect to the mortgage modifications, and sought appropriate equitable and legal relief. On April 11, 2017 Amy Ciarcia filed a *pro se* appearance in this case, and filed her Motion to Dismiss. She concurrently filed a Motion for Relief from Stay (ECF No. 36), in which she asked the Court's permission to further prosecute the Mortgage Litigation in the state court.

---

[2] The Debtor testified at the hearing that he transferred his interest in Ciarcia Family, LLC to Amy Ciarcia in August 2016. ECF No. 90, 0:47-48.
[3] *See* Debtors' Schedules, ECF No. 9.
[4] *Id*.

4

On April 14, 2017, Denise Rivera filed Proof of Claim 12-1 in this case, asserting that Mr. Ciarcia was indebted to her in the amount of $22,000.00, for "services not completed" and "damage due to property negligence".

The Debtor filed his Objection (ECF No. 42) to the Motion to Dismiss on April 25, 2017 arguing that the plan was filed in good faith, the Debtor made all required payments under the plan, and no other grounds for dismissal existed.[5] On June 29, 2017, Denise Rivera filed a *pro se* appearance and request for notices.

At a hearing on the Motion to Dismiss, the Motion for Relief from Stay, and the Debtor's Amended Chapter 13 Plan (ECF No. 69) on August 24, 2017, counsel for the Debtors, the Trustee, Amy Ciarcia and Denise Rivera appeared and were heard. At the beginning of the hearing, counsel for the Debtors withdrew the Debtors' Objection to the Chapter 13 Trustee's Motion to Dismiss and represented that, due to a change in circumstances, the Chapter 13 case was no longer feasible and the Debtors desired to dismiss the case and possibly refile at a later date. The Trustee advanced his Motion to Dismiss, arguing that the plan was not confirmable, no payment had been made since January 2017 and a number of documents, including bank statements and tax returns, were yet to be delivered to the Trustee.

Amy Ciarcia generally argued that the Debtor made material misrepresentations and omissions on his bankruptcy petition and otherwise did not possess a reputation as an honest debtor deserving of bankruptcy protections. Denise Rivera further argued that the Debtor manipulated, misled and defrauded her in connection with construction work he was contracted to perform on her building. Amy Ciarcia, apparently troubled that the Debtor would have the

---

[5] During the August 24, 2017 hearing, counsel for the Debtor conceded that he was unable to confirm whether his client indeed made all owing payments to the Trustee under the Plan or to the creditor Ford Motor Credit Corporation, despite their prior contention that all payments were made. *See* ECF No. 79, 0:40- 42.

5

ability to re-file following the dismissal of his case and further frustrate her state court litigation, petitioned the Court to dismiss the case as to Mr. Ciarcia with a bar order.[6]

The Court held evidentiary hearings on the Motion to Dismiss and Motion for Relief from Stay on August 24, 2017, August 25, 2017 and September 25, 2017.[7] The Debtor, Amy Ciarcia, and Denise Rivera testified and presented evidence to the Court. The Chapter 13 Trustee also appeared and adduced several damaging admissions from the Debtor during the course of the proceeding, including that Denise Rivera and Amy Ciarcia were never scheduled or noticed, and that the Debtor failed to disclose the pendency of significant personal injury lawsuits on his petition. At the conclusion of the hearing, the Court took the matter under advisement.

IV. DISCUSSION

The facts of this case have led the Court to an examination of the Debtor's alleged lack of good faith under Section 1307(c). The gravamen of this Ruling turns upon whether the movants have sufficiently shown cause for dismissal with prejudice. Section 1307, which governs conversion or dismissal of Chapter 13 cases, provides:

> (b) On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.
>
> (c) Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause…

---

[6] The *pro se* party made, in effect, an argument that the bankruptcy case should be dismissed, with prejudice, on the grounds that it was not filed in good faith.
[7] References herein to the August 24, 2017, August 25, 2017 and September 25, 2017 evidentiary hearings refer to the corresponding audio files on the docket of this case (ECF Nos. 79, 81, 82, 90).

Section 1307(c) provides a non-exhaustive list[8] of events that would be considered "for cause." 11 U.S.C. § 1307(c); *See also* 8 Collier on Bankruptcy ¶ 1307.04, p. 1307-20 (Alan N. Resnick & Henry J. Sommers eds., 16th ed.). Although not expressly enumerated in the statute, "it is well established that lack of good faith may also be cause for dismissal under § 1307(c)." *In re Prisco*, 2012 WL 4364311, at *4 (N.D.N.Y. 2012); *see also Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 379, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007). In determining whether a debtor has pursued actions in a case that would warrant conversion or dismissal for lack of good faith, a court must review the totality of the circumstances. *In re Lin*, 499 B.R. 430, 435 (Bankr. S.D.N.Y. 2013); *see also In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999). "The totality of the circumstances should take into consideration whether the debtor has abused the 'provision, purpose or spirit' of the Bankruptcy Code and whether the filing is 'fundamentally fair' to creditors." *In re Armstrong*, 409 B.R. 629, 634 (Bankr. E.D.N.Y. 2009) (citing *In re Love*, 957 F.2d 1350, 1357 (7th Cir.1992)).

Factors that courts have considered in determining whether a debtor has failed to pursue a Chapter 13 bankruptcy in good faith are "whether the debtor was forthcoming with the court, whether the debtor accurately stated facts, debts, and expenses, whether the debtor misled the court through fraudulent misrepresentation, how the debtor's actions affect creditors, and whether

---

[8] Examples of cause included in the statute are: (1) unreasonable delay by the debtor that is prejudicial to creditors; (2) nonpayment of any fees and charges required under chapter 123 of title 28; (3) failure to file a plan timely under section 1321 of this title; (4) failure to commence making timely payments under section 1326 of this title;(5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan; (6) material default by the debtor with respect to a term of a confirmed plan; (7) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title; (8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan; (9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521; (10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521; or (11) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition. 11 U.S.C. § 1307(c).

the debtor has abused the purpose of the bankruptcy code." *In re Lin*, 499 B.R. at 436 (citing *In re Klevorn*, 181 B.R. 8, 11 (Bankr. N.D.N.Y.1995)). "Bankruptcy courts routinely allow for dismissal of proceedings when pre-petition bad faith conduct is present", *Id*. at 436, and consistently hold that the dishonesty of a debtor is an indication of bad faith conduct warranting dismissal. *See Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *see also In re Leavitt*, 171 F.3d at 1225). "The determination of whether a debtor filed a petition or plan in bad faith so as to justify dismissal for cause is left to the sound discretion of the bankruptcy court." *In re Prisco*, 2012 WL 4364311, at *4.

Where a party calls into question a debtor's good faith and meets their initial burden of showing cause for dismissal, the burden shifts to the debtor to prove her good faith. *See In re Lombardo*, 370 B.R. 506, 513 (Bankr. E.D.N.Y. 2007) (citing *In re Tamecki*, 229 F.3d 205, 207 (3rd Cir. 2000).

    A. The Debtor's Dishonesty, Omissions and Abuse of the Bankruptcy System

The Debtor's testimony, arguments and lack of credibility at the evidentiary hearing did little to address the movants' contentions, proof and allegations of his lack of good faith, which ultimately went unrebutted.[9] For the reasons discussed below, in weighing these factors in the totality of the circumstances, the Debtor's acts and omissions herein readily tip the scales in favor of a finding that the Debtor did not file and maintain this Chapter 13 case in good faith.

    *1. The Debtor failed to schedule and notice known creditors*

The evidence presented at the hearing clearly establishes that at the time of filing, the Debtor knew or should have known of the existence of several claims against him that he

---

[9] While the Court generally found the testimony of Amy Ciarcia and Denise Rivera to be credible, the Debtor's testimony—replete with evasive responses, minimization of consequences, and conceded material nondisclosures—served to confirm his lack of credibility before this Court.

8

ultimately failed to disclose on his bankruptcy petition. It is reasonable to infer, based on these facts and circumstances, that his omissions of these material claimants and lack of notice to the holders of such claims were calculated.

Amy Ciarcia testified that, in May 2016, she confronted the Debtor after learning that her name was signed on several loan modifications.[10] The Debtor filed the instant bankruptcy in October 2016, merely five months after Amy Ciarcia accused him of forging her signature on the loan modifications and defaulting on the loan obligations. Notwithstanding the Debtor's testimony to the contrary[11], the matrix on the Debtors' petition readily reveals that neither Amy Ciarcia nor Ciarcia Family, LLC received notice of the bankruptcy filing.[12]

The entirety of Denise Rivera's testimony, as well as several hundreds of text messages admitted into evidence, chronicle the year long contract dispute between her and the Debtor, and overwhelmingly substantiate that the work performed by the Debtor was poor, unresponsive or wholly incomplete. The Debtor himself testified that he did not finish the work agreed to under the contract.[13] The uncontroverted evidence indicates that, as early as two months prior to filing, Denise Rivera unequivocally informed the Debtor that she was entitled to redress for $22,000.00 worth of services he did not complete.[14] The Debtor's only explanation as to why she was not noticed—that he was not contacted by Denise Rivera or her counsel for some months prior to

---

[10] The Debtor testified numerous times that he signed and dated the mortgage modifications, but inexplicably could not recall who was in the room with him when he signed them. ECF Nos. 90, 1:42, 1:45. Notably, all three signatures on each successive modification document—that of Ciarcia Family, LLC, Amy Ciarcia, and Paul Ciarcia—were made on the same date. Notwithstanding his earlier testimony, the Debtor later testified that Michael Ciarcia, Amy Ciarcia's husband, had signed the document on her behalf. ECF No. 90, 0:30. While the allegations may present a colorable issue, insufficient proof was advanced at the hearing to substantiate the alleged forgery. Such claims are best left to the state court to address in the Mortgage Litigation.

[11] In response to the Court's inquiry, the Debtor testified that he noticed Ciarcia Family, LLC on his Chapter 13 petition. ECF No. 90, 0:32.

[12] *See* ECF No. 1.

[13] ECF No. 90, 1:02-1:03; 1:24-1:25.

[14] *See* DR Ex. B.

and after the filing of his bankruptcy petition—does little to controvert that at the time of filing, the Debtor was well aware of the substance and extent of her claims against him, and nevertheless failed to schedule or notice her.

The Debtor also failed to give notice of his bankruptcy to an unidentified number of customers that made complaints about the work he did at Paul's Automotive, LLC, and to co-workers or employees who "fronted" to secure utility accounts for him. According to the Debtor's testimony, he received complaints from customers in the months immediately prior to the petition date regarding work that he performed at a time when his repairman's license was suspended or revoked.[15] The Debtor's matrix indicates that no such customers were given notice of his bankruptcy, and the Debtor testified to the same.[16] The Debtor's testimony also substantiated that Michael Ciarcia and other co-workers or employees opened utility accounts for the Debtor's business that were registered under their own names.[17] The matrix similarly shows no notice to Michael Ciarcia or to the Debtor's employees or creditors who provided their credit at his behest.

The Debtor's actions served to deprive his creditors and other claimants of meaningful opportunities to participate in this case, and had the untenable effect of misleading both the Chapter 13 Trustee and this Court as to the propriety of Chapter 13 relief.

### 2. *The Debtor failed to disclose material pending litigation*

During the hearing, the Debtor also testified that he failed to disclose two pending personal injury actions initiated by him[18] in violation of his express and affirmative duty to disclose all assets, which include contingent and unliquidated claims. *In re Prisco*, 2012 WL

---

[15] ECF No. 90, 0:58.
[16] *See* ECF No. 1; ECF No. 90, 0:58-59.
[17] *Id.* at 0:52-53.
[18] ECF No. 90, 1:39.

4364311, at *4 (citing *In re Coastal Plains, Inc.*, 179 F.3d 197, 207–08 (5th Cir.1999)). The Debtor provided no mitigating evidence to explain these material omissions, except that the claims were still pending and he may have misunderstood the law. His contention is unavailing, however, as his schedules plainly show that he disclosed three other lawsuits that he categorized as "pending".[19]

A long standing tenant of bankruptcy law requires that a debtor seeking shelter under the Bankruptcy Code must disclose all assets and potential assets. *See* 11 U.S.C. § 521(a)(1). Even if, for example, the Debtor believed that the claims were not viable, he nonetheless had a duty to disclose them, and such duty persists throughout the pendency of the bankruptcy case. *In re Lowery*, 398 B.R. 512, 515 (Bankr. E.D.N.Y. 2008). "Because the bankruptcy court, trustees, and creditors rely on the information disclosed by a debtor", full disclosure is crucial to the effective functioning of the bankruptcy process. *Id*. No efforts to supplement his disclosures were ever advanced.

### 3. *The Debtor has engaged in egregious misconduct that prejudiced creditors*

The uncontroverted evidence presented at the hearing also shows that, in connection with the aforementioned claimants, the Debtor engaged in conduct violative of state and federal laws and demonstrated an utter disregard for the law, his fiduciary duties to Ciarcia Family, LLC, and the harms visited upon several third parties.

The Debtor admitted that he engaged in and solicited business at Paul's Automotive at a time that he knew his repairman's license was either suspended or revoked.[20] The Debtor also testified that he engaged in disguised cash transactions to circumvent certain penalties imposed by his financial institutions that prevented him from opening a bank account. Instead of receiving

---

[19] See Debtor's Schedules, ECF No. 9.
[20] ECF No. 90, 0:58-59; 1:22-23.

checks payable to Expo Remodeling, LLC or Expo Auto, LLC, dubious affiliates of Paul's Automotive, LLC, the Debtor admitted that he would routinely request that checks be made payable to Paul Ciarcia Sr., his father, who would then deposit or cash the checks on the Debtor's behalf.[21] Further, the Debtor was less than honest with Denise Rivera about what entity was performing her construction work, whether that entity was licensed, and who was to receive Internal Revenue Service 1099 statements for payments received. Uncontroverted evidence presented at the hearing substantiated that the Debtor evaded Denise Rivera's multiple requests for the business's tax identification number so as to impair the identification of the proper contract payee, the reporting to the IRS, and the redress due under the construction contract.

The Debtor also unabashedly testified that prior to transferring his interest in Ciarcia Family, LLC to Amy Ciarcia, he collected rents from tenants on the Property that were not used to pay his financial obligations on the mortgage.[22] He also admitted that after he transferred his interest in the business to Amy Ciarcia, he induced a tenant to make a rental payment to him in the amount of $7,000.00, with no right or entitlement to do so, and that he did not apply those funds to the Property's outstanding financial obligations or remit the funds to Ciarcia Family, LLC.[23]

The Debtor's actions in connection with his creditors, customers, the Chapter 13 Trustee and this Court were in bad faith, dishonest and manipulative, and promote Mr. Ciarcia into a class of debtors that the Bankruptcy Code was not intended to shelter. *See Grogan v. Garner*, 498 U.S. at 287, 111 S. Ct. 654 ("That individual, in other words, is not a member of the class of honest but unfortunate debtor[s] that the bankruptcy laws were enacted to protect.").

---

[21] *Id.* at 1:17-18.
[22] ECF No. 90, 0:34.
[23] *Id.* at 0:48, 0:52.

B. The Record Amply Supports a Finding of a Lack of Good Faith

Under these circumstances and on the evidence presented, the Court must conclude that the Debtor did not file and maintain this bankruptcy case in good faith. In addition to omitting and misrepresenting assets and creditors on his petition[24], the Debtor used bankruptcy for his own purposes, without regard to his fiduciary duties to creditors or the responsibilities imposed upon him by the Bankruptcy Code. Moreover, despite the obligation to make payments under his Chapter 13 plan, the record indicates that the Debtors have enjoyed the protection of the automatic stay for at least seven months while making no mortgage payments or plan payments to the Trustee, notwithstanding the purported means to do so.[25]

It is a fundamental tenant of the Bankruptcy Code to provide "the honest but unfortunate debtor a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *In re Tornheim*, 239 B.R. 677, 686 (Bankr. E.D.N.Y. 1999) (citing *Grogan v. Garner*, 498 U.S. at 286, 111 S. Ct. 654) (internal citations and quotations omitted). However, "that objective is tempered by an awareness that debtors who lack good faith cannot be rewarded with the benefits of the bankruptcy process. *Id* (citing *Natural Land Corp. v. Baker Farms, Inc. (In re Natural Land Corp.)*, 825 F.2d 296, 297–98 (11th Cir.1987)). Accordingly, the Court finds good and compelling cause to dismiss the case with prejudice.

---

[24] Through judicial notice of the Debtors' Petition and Schedules, the Court notes that the Debtor misrepresented that he had a 35% interest in Ciarcia Family, LLC on his petition.

[25] The Debtor testified that he has been steadily employed in another automotive repair business since April 2017. ECF No. 90, 0:07. However, he also testified that he made no payments toward his mortgage obligation after December 2016, or to the Trustee after January 2017. ECF No. 90, 0:05, 0:30.

C. Dismissal With Prejudicial Bar

Amy Ciarcia has asked this Court to dismiss the case with a bar order on the Debtor's ability to file for future bankruptcy relief. There is nothing in the language of Section 1307(c) of the Bankruptcy Code that prevents a bankruptcy court, upon dismissal of the debtor's bankruptcy case, from sanctioning a debtor for misconduct occurring during the pendency of the case. *See Marrama*, 549 U.S. at 374–75, 127 S. Ct. 1105 ("Nothing in the text of either § 706 or § 1307(c) (or the legislative history of either provision) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor.").Where, as here, there is sufficient cause, the imposition of prejudice under the authority of Section 105(a) and Section 349(a) is necessary to prevent the abuse of a Chapter 13 case. *See In re Smigelski*, 2012 WL 1569617, at *2 fn 4 (Bankr. D.Conn. 2012) ("While there is clear authority under § 105(a), courts have also used § 349 … to implement sanctions for abusive bankruptcy agendas. Although [S]ection 349 establishes a presumption of non-prejudicial dismissal except where [Section] 109(g) explicitly imposes prejudice, it allows the court to rebut that presumption and attach prejudice to the dismissal order where 'cause' exists.").

Here, the Debtor's pre and post-petition conduct was abusive and warrants the imposition of a bar order. Accordingly, for the reasons stated above, and for cause shown, the Court finds that a dismissal with a prejudicial bar order is an appropriate sanction in this matter.

V. CONCLUSION AND ORDERS FOR RELIEF

For the foregoing reasons, the Court hereby grants the Motions to Dismiss, and overrules the objections thereto. The Debtor, Paul Ciarcia, is barred from filing for relief under any

Chapter of the Bankruptcy Code, in any bankruptcy court, for a period of not less than three (3) years, unless, in connection with such a filing, he demonstrates:

1) The claims of Denise Rivera have been fully and finally resolved by a judgment in his favor, or a complete settlement, or the satisfaction of any judgment or civil or criminal restitution order(s) in her favor; and

2) The entry of a final judgment in the Mortgage Litigation or any related civil or criminal proceeding(s) in the Debtor's favor, or a complete settlement, or satisfaction of any claims or final judgement regarding the mortgage modification dispute in favor of Amy Ciarcia and/or Ciarcia Family, LLC.

It is further ordered that, for cause shown, the Motion for Relief from Stay is granted under 11 U.S.C. § 362(d)(1)[26], and the Debtors' Objection thereto is overruled. The fourteen (14) day stay related thereto is also hereby waived for cause.

Pursuant to 11 U.S.C. § 105, in the event of any subsequent Chapter 13 bankruptcy filing of Lisa A. Ciarcia, this Court decrees that the co-debtor stay under 11 U.S.C.§ 1301 shall not serve to stay or enjoin any civil or criminal proceedings by Amy Ciarcia or Denise Rivera related to their claims raised herein against the Debtor.

The Chapter 13 case of Lisa A. Ciarcia is dismissed for cause, but without prejudice.

Dated at Hartford, Connecticut this 1st day of November 2017.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut

---

[26] Cause, for either dismissal or relief from the stay, may be found based on unenumerated factors, including bad faith, or failure to deal with creditors fairly even where bad faith is not found. *In re Syndicom Corp.*, 268 B.R. 26, 48 (Bankr. S.D.N.Y. 2001) (citing *C-TC 9th Ave. Partnership*, 113 F.3d 1304, 1313 (2d Cir. 1997)) (internal quotations omitted). The standards for bad faith as evidence of cause, whether in the context of dismissal or relief from the stay, are not substantively different from each other. *See In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997).